IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.        )<br>)<br>JOSE ALEXIS MOLINA,   )<br>)<br>Defendant.       ) | Criminal Action No. 1:22-cr-209 (RDA) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Jose Alexis Molina's ("Defendant") Motion to Dismiss the Indictment ("Motion"). Dkt. 24. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Loc. Crim. R. 47(J). Having considered the Motion together with the Government's Opposition (Dkt. 33) and Defendant's Reply (Dkt. 47), this Court denies the Motion for the following reasons.

### I. BACKGROUND

A Grand Jury sitting in the Eastern District of Virginia charged Defendant on November 8, 2022 with one count of unlawful reentry subsequent to a conviction for the commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). Dkt. 15. On November 16, 2022, this Court scheduled trial for January 5, 2023. Defendant subsequently filed the instant Motion on December 7, 2022, moving this Court to declare the Immigration and Nationality Act of 1952 ("INA"), the illegal reentry statute under which Defendant has been charged, unconstitutional under the Fifth Amendment's Equal Protection Clause. Dkt. 24. On December 23, 2022, the Government filed its Opposition to Defendant's Motion (Dkt. 33), and on December 30, 2022, Defendant filed a Reply in support of his Motion (Dkt. 47).

## II. ANALYSIS

As an initial matter, it is important to note that the parties disagree as to the appropriate standard of review. The Government contends that rational basis review is appropriate, while Defendant argues that the Court should apply heightened scrutiny under the *Arlington Heights* framework. The Court will examine § 1326 under both tests. Ultimately, under either test, § 1326 survives Defendant's constitutional challenge.

### A. Rational Basis

The Government maintains that the Court should apply rational basis review to § 1326 given Congress' plenary legislative power in the arena of immigration law. The Court finds that a great deal of authority support's the Government's position. Indeed, the Supreme Court has "firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003); *see also Johnson v. Whitehead*, 647 F.3d 120, 126-27 (4th Cir. 2001) ("'[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977))). Unsurprisingly then, courts typically apply rational basis review when considering the constitutionality of immigration laws. *See Midi v. Holder*, 566 F.3d 132, 137 (4th Cir. 2009) ("Although courts usually subject national-origin classifications to strict scrutiny, when such classifications involve unadmitted aliens in the immigration context, we subject them only to rational basis review."). Moreover, recent Supreme Court cases "have reaffirmed and applied [this] deferential standard of review across different [immigration] contexts and constitutional claims." *Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018).

The Court finds that § 1326 easily satisfies rational basis review. Rational basis review "is quite deferential. It simply requires courts to determine whether the classification in question is, at a minimum, rationally related to legitimate government goals." *Wilkins v. Gaddy*, 734 F. 3d 344, 347-48 (4th Cir. 2013). Here, the Government undoubtedly has a legitimate interest in securing this country's borders and deterring those who seek to reenter the United States unlawfully. Indeed, the Supreme Court has explained that "[i]t is axiomatic that the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting its territorial integrity." *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). Furthermore, § 1326 plays a critical role in border control efforts, as the law sanctions those who disregard a previous deportation order. Accordingly, under rational basis review, Defendant's challenge fails.

## B. *Arlington Heights*

Pursuant to *Arlington Heights*, "[w]hen there is a proof that a discriminatory purpose" motivated Congress to pass a law, that law is subject to heightened scrutiny. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977). In determining whether a discriminatory purpose motivated Congress to pass § 1326, the Court must examine several factors, including the law's impact, its historical background, "[t]he specific sequence of events leading up to the challenged decision," the legislature's substantive departures from the normal lawmaking process, and legislative or administrative history. *Id.* at 266-68.

Defendant first asserts that subjecting § 1326 to heightened scrutiny is appropriate because racism and eugenics were the primary factors driving the passage of the Undesirable Aliens Act of 1929—a predecessor to the 1952 statute at issue here. Dkt. 24 at 5-16. Defendant

3

bases his argument on the pervasive climate of racist rhetoric in the 1920s and records from congressional hearings and speeches. *Id.*

The Court finds, however, that the historical context and the legislative history surrounding the passage of the 1929 statute does little to suggest any discriminatory purpose behind the 1952 statute. Although Defendant claims that the Court can consider Congress' silence in 1952 about the prior iteration of the statute as evidence of continued racial animus, the Supreme Court has cautioned against "[d]rawing meaning from [Congressional] silence." *Kimbrough v. United States*, 552 U.S. 85, 103 (2007); *see also Zuber v. Allen*, 396 U.S. 168, 185 n.21 (1969) ("Where . . . there is no indication that a subsequent Congress has addressed itself to the particular problem, we are unpersuaded that silence is tantamount to acquiescence.").

What's more, other courts in this District have squarely rejected similar arguments that the later reenactment of § 1326 remains tainted by the racial bias that purportedly shrouded the 1929 version of the statute. *See e.g.*, *United States v. Cac-Chon*, No. 3:20-cr-61, ECF N. 27 at 4 (E.D. Va. Nov. 10, 2020) ("[E]ven if this Court accepted Defendant's analysis that Congress's primary purpose in passing the Undesirable Aliens Act of 1929 was discriminatory, it would be improvident and inappropriate to use that same basis to infer the intent of the 82nd Congress."); *United States v. Palacios-Arias*, No. 3:20-cr-62, ECF No. 29 at 6-7 (E.D. Va. Oct. 13, 2020) ("Even assuming[ ] [ ] that the Court can consider the discriminatory purpose that the defendant alleges motivated Congress to pass the Undesirable Aliens Act of 1929, this evidence has only marginal relevance to the defendant's challenge to the INA, passed by Congress twenty-three years later.").

Defendant further argues that the legislative history of the 1952 statute was also imbued with racial animus. Dkt. 24 at 23. In support of his argument, Defendant points to President

Truman's veto statement condemning the INA and a statement made by Deputy Attorney General Peyton Ford, in which he used a derogatory slur for aliens who came to the United States from Mexico. *Id.* at 24-25. Regarding President Truman's veto of the INA, the Supreme Court has advised against relying on the views of a bill's opponents when discerning legislative intent. *See Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 29 (1988) ("This Court does not usually accord much weight to the statements of a bill's opponents."). Furthermore, neither President Truman nor Ford were lawmakers, and thus, their views on the INA are not particularly probative of Congress' intent. *See United States v. Barrera-Vasquez*, No. 2:21CR98, 2022 WL 3006773, at *7 (E.D. Va. July 28, 2022) (concluding that Ford's statement is of little value in discerning Congressional intent).

In sum, the Court finds that Defendant has not established the requisite discriminatory purpose behind the INA that would necessitate subjecting it to heightened scrutiny under *Arlington Heights*. Accordingly, for the reasons provided *supra* Section II.A., Defendant's constitutional challenge to § 1326 fails.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. 24) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
January 2, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge